1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9

10    GS HOLISTIC, LLC,                          CASE NO. C23-0397JLR

11                              Plaintiff,       ORDER

            v.
12
      NWIN LLC, et al.,
13
                              Defendants.
14

15                      **I.    INTRODUCTION**

16          Before the court is Plaintiff GS Holistic, LLC's ("GS Holistic") motion for entry

17    of default judgment against Defendants NWIN LLC d/b/a Star Vape ("Star Vape") and

18    Jaebum In (together, "Defendants").  (Mot. (Dkt. # 13); *see* Prop. Judgment (Dkt.

19    # 13-3).)  Neither Defendant has appeared in this action, and the Clerk has entered default

20    against both Defendants.  (*See* Dkt.; Entry of Default (Dkt. # 11).)  The court has

21    considered GS Holistic's motion, the materials it submitted in support of its motion, the

22    relevant portions of the record, and the governing law.  Being fully advised, the court

1  GRANTS in part and DENIES in part GS Holistic's motion for entry of default

2  judgment.

3  ## II.   BACKGROUND

4      GS Holistic is a Delaware limited liability corporation ("LLC") that has its

5  principal place of business in California.  (Compl. (Dkt. # 1) ¶ 4.)  It alleges that it is the

6  registered owner of the "G PEN" trademarks, has worked to distinguish the G Pen brand

7  as "the premier manufacturer of vaporizers," and has devoted significant time and

8  resources to promoting and protecting its trademark.  (*Id.* ¶¶ 4, 7-9, 16.)  In 2016, Grenco

9  Science, Inc. assigned to GS Holistic all rights associated with the G PEN trademark and

10  other trademarks associated with products sold by GS Holistic.  (*Id.* ¶ 10.)  As a result,

11  GS Holistic is now the owner of 21 registered trademarks—including word marks,

12  standard character marks, and design plus words marks—related to its G Pen products

13  (together, the "G Pen Marks"[1]).  (*Id.* ¶¶ 11(a)-(u).)  GS Holistic asserts that consumers

14  are willing to pay more for "the recognized quality and innovation associated with the

15  G Pen Marks."  (*Id.* ¶ 20.)  Thus, genuine G Pen brand vaporizers are priced between

16  $70.00 and $250.00 while equivalent non-G Pen products usually sell for between $11.00

17  and $20.00.  (*Id.*)

18      Defendant Star Vape is a Washington LLC that has its principal place of business

19  in Washington.  (*Id.* ¶ 5.)  Defendant Jaebum In is a resident and citizen of Washington

20  and is the owner of Star Vape.  (*Id.* ¶¶ 6, 21, 23.)  GS Holistic alleges that Defendants

21

22      [1] GS Holistic uses the terms "G Pen Marks" and "G Pen Trademarks" interchangeably in
its complaint.  (*See generally* Compl.)  The court uses the term "G Pen Marks" in this order.

have offered for sale counterfeit goods bearing "reproductions, counterfeits, copies and/or colorable imitations of one or more" of the following G Pen Marks:  (a) U.S. Trademark Registration No. 4,470,963 "for the standard character mark 'Grenco Science' in association with goods further identified in the registration in international class 010"; (b) U.S. Trademark Registration No. 4,616,071, "for the standard character mark 'Grenco' in association with goods further identified in the registration in international class 010"; (c) U.S. Trademark Registration No. 5,264,986 "for the standard character mark 'G Pen Elite' in association with goods further identified in the registration in international class 034"; and (d) U.S. Trademark Registration No. 5,264,988 "for the design plus words mark 'G Pen Elite' and its logo in association with goods further identified in the registration in international class 034" (together, the "Infringing Marks").  (*Id.* ¶¶ 25(a)-(d); *see* Mot., Ex. A (screenshots of pages from the United States Patent and Trademark Office's Trademark Electronic Search System that describe these trademarks).)  On December 6, 2022, according to GS Holistic, its investigator visited Star Vape's location; observed that the shop had "an excess of vaporizers" that displayed the G Pen Marks; purchased "an Elite Vaporizer with a G Pen Mark affixed to it" for $197.97; and determined the vaporizer "was a [c]ounterfeit product in that it displayed the Infringing Marks."  (Compl. ¶ 29.)

GS Holistic filed its complaint on March 16, 2023.  (*Id.* at 1.)  It alleges claims under the Lanham Act against both Defendants for counterfeiting and trademark infringement in violation of 15 U.S.C. § 1114 and for false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 51-67.)  Among other

1   relief, it seeks damages, costs of suit, a permanent injunction prohibiting Defendants

2   from continuing to infringe its G Pen trademarks, and an order requiring Defendants to

3   deliver all infringing products to GS Holistic for destruction.  (*Id.* at 15-16.)

4     GS Holistic served Defendants on June 16, 2023.  (*See* Service Affs. (Dkt.

5   ## 8-9).)  The Clerk entered default against Defendants on July 19, 2023.  (Entry of

6   Default.)  GS Holistic filed this motion for entry of default judgment on October 31,

7   2023.  (Mot.)

8           **III.   ANALYSIS**

9     Below, the court sets forth the relevant legal standard and then evaluates GS

10   Holistic's motion for entry of default judgment.

11   **A.   Legal Standard**

12     Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default

13   judgment against a defaulting defendant upon the plaintiff's motion.  Fed. R. Civ. P.

14   55(a), (b)(2).  After default is entered, well-pleaded factual allegations in the complaint,

15   except those related to damages, are considered admitted and are sufficient to establish a

16   defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

17   1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

18     Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*,

19   616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the court considers

20   seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief

21   is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the

22   claims raised in the complaint; (4) the sum of money at stake in relationship to the

1  defendant's behavior; (5) the possibility of a dispute concerning material facts;

2  (6) whether default was due to excusable neglect; and (7) the preference for decisions on

3  the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

4  1986).  After the court determines that default judgment is appropriate, it must then

5  determine the amount and character of the relief that should be awarded.  *See TeleVideo*,

6  826 F.2d at 917-18.

7  **B.    Whether the *Eitel* Factors Favor Default Judgment**

8         The court preliminarily determines that default judgment is warranted in this case

9  because, on balance, the *Eitel* factors weigh in favor of such judgment.  The court

10 discusses each factor in turn.

11        1.    Possibility of Prejudice to Plaintiff

12        The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

13 judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

14 1177 (C.D. Cal. 2002).  Without default judgment, GS Holistic will suffer prejudice

15 because it will "be denied the right to judicial resolution" of its claims and will be

16 "without other recourse for recovery."  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D.

17 388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering default

18 judgment.

19        2.    Substantive Merits and Sufficiency of the Complaint

20        The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

21 and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

22 *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

1    judgment, the complaint's allegations must be sufficient to state a claim for relief.

2    *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

3    standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

4    relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

5    *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  At the default judgment stage, the

6    court "must take the well-pleaded factual allegations [in the complaint] as true" but

7    "necessary facts not contained in the pleadings, and claims which are legally insufficient,

8    are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267

9    (9th Cir. 1992).

10          GS Holistic alleges claims for trademark counterfeiting and infringement under 15

11   U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C.

12   § 1125(a).  (Compl. ¶¶ 51-67.)  The court reviews each in turn.

13                    a.      *Trademark Counterfeiting and Infringement*

14          To prove liability for trademark infringement, the trademark holder must

15   demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the

16   alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to

17   deceive" consumers.  *Reno Air Racing Ass'n., v. McCord*, 452 F.3d 1126, 1134 (9th Cir.

18   2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

19   602 (9th Cir. 2005)).

20          First, GS Holistic has provided uncontested proof that it is the owner of the G Pen

21   Marks by virtue of assignment.  (*See generally* Mot., Ex. A.  *See also* Compl. ¶ 4 ("GS

22

1 [Holistic] is the registered owner of the 'G PEN' trademarks.").)  Thus, GS Holistic has

2 satisfied the first element of trademark infringement for the purpose of default judgment.

3       Second, "[l]ikelihood of confusion exists when consumers viewing the mark

4 would probably assume that the goods it represents are associated with the source of a

5 different product identified by a similar mark." *KP Permanent Make-Up*, 408 F.3d at

6 608.  Courts generally evaluate eight factors to determine whether confusion is likely:

7 "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of

8 the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree

9 of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent

10 in selecting the mark; and 8) the likelihood of expansion into other markets." *Id*.  Where

11 a defendant uses a counterfeit mark, however, courts both within and outside the Ninth

12 Circuit presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater*

13 *Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013)

14 (compiling cases); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse*

15 *Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a

16 court need only determine that the items at issue are counterfeit and that the defendant

17 distributed, offered for sale, or sold the items.").  The Lanham Act defines a "counterfeit"

18 as "a spurious mark which is identical with, or substantially indistinguishable from, a

19 registered mark."  15 U.S.C. § 1127.

20       Here, GS Holistic alleges that its investigator purchased a vaporizer with a G Pen

21 Mark "affixed" to it and determined that it was a counterfeit product that displayed the

22 "the Infringing Marks." (Compl. ¶ 29.)  GS Holistic further alleges that the "Infringing

Marks" are "reproductions, counterfeits, copies and/or colorable imitations of one or more" of a subset of four G Pen Marks. (*Id.* ¶ 25.) Accordingly, the court concludes that GS Holistic has sufficiently alleged that Defendants sold a product bearing a counterfeit mark and, as a result, there is a presumption of consumer confusion. *See Coach, Inc.*, 2013 WL 5406220, at *3. Thus, because GS Holistic has demonstrated that it owns a valid mark and that Defendants' use of the mark is likely to cause consumer confusion, the court concludes that GS Holistic has sufficiently alleged its trademark counterfeiting and infringement claim.

### b. *False Designation of Origin*

To show liability for false designation of origin, the plaintiff must show that the defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or misrepresents the characteristics of his or another person's goods or services." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). As to the first two elements, GS Holistic alleges that Defendants sold (and thus, used in commerce) at least one vaporizer bearing at least one of the Infringing Marks. (Compl. ¶¶ 28-29.) And the court concluded above that GS Holistic has plausibly alleged a likelihood of confusion resulting from Defendants' use of the Infringing Marks. Accordingly, GS Holistic has stated a false designation of origin claim.

Because GS Holistic has demonstrated that its claims have substantive merit and that it has sufficiently alleged those claims in its complaint, the court concludes that the second and third *Eitel* factors weigh in favor of default judgment.

3.      Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176.  Here, GS Holistic seeks (1) $200,000 in statutory damages—$50,000 per Infringing Mark—for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) and (2) costs in the amount of $854.97.  (*See* Mot. at 13.)  The court concludes that the requested statutory damages and costs are not so unreasonable in relation to the conduct alleged in the complaint as to weigh against entry of default judgment.

4.      Possibility of a Dispute over Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where, as here, the defendant has defaulted, the court must take all well-pleaded allegations in the complaint as true, except those related to damages.  *TeleVideo*, 826 F.2d at 917-18; s*ee also Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote.").  Thus, the court concludes there is little risk of dispute over material facts and the fifth *Eitel* factor weighs in favor of granting default judgment.

5.      Excusable Neglect

The sixth *Eitel* factor considers the possibility that the defendant's default resulted from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Here, GS Holistic has provided evidence that Defendants were served (*see* Service Affs.), and there is no evidence in the record that Defendants' failure to answer or respond is the result of

ORDER - 9

1   excusable neglect.  Accordingly, the court concludes that the sixth *Eitel* factor weighs in

2   favor of default judgment.

3          6.     Policy Favoring Decisions on the Merits

4          "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

5   782 F.2d at 1472.  Where, as here, a defendant fails to appear or defend itself in action,

6   however, the policy favoring decisions on the merits is not dispositive.  *PepsiCo*, 238 F.

7   Supp. 2d at 1177.  Therefore, the court concludes that the seventh *Eitel* factor does not

8   preclude entry of default judgment.

9          In sum, because the *Eitel* factors weigh in favor of default judgment, the court

10  concludes that entry of default judgment is warranted in favor of GS Holistic on its

11  claims against Defendants.

12  **C.     Requested Relief**

13         The court now turns to the issue of remedies.  "A default judgment must not differ

14  in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P.

15  54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting

16  defendants are not deemed to have admitted the facts alleged in the complaint concerning

17  the amount of damages.  *TeleVideo*, 826 F.2d at 917.  Rather, the plaintiff "must 'prove

18  up' the amount of damages that it is claiming."  *Philip Morris USA, Inc. v. Castworld*

19  *Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash.

20  //

21  //

22  //

LCR 55(b)(2).[2]  By analogy, plaintiffs must also "prove up" their entitlement to other forms of relief, such as a permanent injunction.  *See Gucci Am., Inc. v. Tyrrell–Miller*, 678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

GS Holistic requests statutory damages, litigation costs, injunctive relief, and destruction of the infringing products.  (*See* Mot. at 11-14.)  The court considers each remedy below.

1.    Statutory Damages

Under the Lanham Act, a plaintiff may elect whether to recover its actual damages caused by the defendants' use of a counterfeit mark or statutory damages.  15 U.S.C. § 1117(c).  GS Holistic has elected to seek statutory damages.  (Mot. at 11-13; *see* Compl. at 15-16 (including statutory damages in its prayer for relief).)

The court has discretion to award statutory damages between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  If, however, the court finds that the trademark violation was willful, it may award up to $2,000,000 for each infringement. *Id.* § 1117(c)(2).  "[S]tatutory damages may compensate the victim, penalize the

---

[2] This court's Local Civil Rules require plaintiffs to support a motion for default judgment with:

a declaration and other evidence establishing [the] plaintiff's entitlement to a sum certain and to any nonmonetary relief sought.  [The] [p]laintiff shall provide a concise explanation of how all amounts were calculated, and shall support this explanation with evidence establishing the entitlement to and amount of the principal claim, and, if applicable, any liquidated damages, interest, attorney's fees, or other amounts sought[.]

Local Rules W.D. Wash. LCR 55(b)(2).

1    wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v.*

2    *Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v.*

3    *Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)).  When determining the

4    appropriate amount of statutory damages to award on default judgment, courts consider

5    whether the amount bears a "plausible relationship to [the p]laintiff's actual damages."

6    *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc.*

7    *v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)).  That

8    is, although a plaintiff in a trademark infringement suit is entitled to damages that will

9    compensate and serve as a deterrent, "it is not entitled to a windfall." *Id.*

10        GS Holistic requests statutory damages of $50,000 for each of the Infringing

11   Marks, for a total of $200,000.  (Mot. at 11-13.)  GS Holistic's evidence of its actual

12   damages caused by Defendants' trademark violations, however, is limited to allegations

13   that its investigator observed "an excess of" vaporizers that displayed G Pen Marks and

14   purchased a single vaporizer with an unspecified Infringing Mark "affixed to it" for

15   $197.97.  (*See* Compl. ¶ 29; *see also id.* ¶¶ 35, 37-39 (alleging that Star Vape sold

16   counterfeit goods "under the Infringing Mark"); *id.* ¶ 36 (alleging that "[t]he Infringing

17   Mark affixed to the Counterfeit Goods . . . is confusingly identical or similar to the G Pen

18   Marks").)  GS Holistic asserts in its motion that the vaporizer bore "four (4) fake G Pen

19   Marks."  (Mot. at 10.)  Because it did not make this allegation in its complaint, however,

20   that fact has not been established by Defendants' default.  (*See generally* Compl.)  In

21   addition, GS Holistic does not explain how one product can bear trademarks associated

22   with two different international classes of goods.  (*See id.* ¶¶ 25(a)-(b) (describing

1    Infringing Marks associated with international class 010); *id.* ¶¶ 25(c)-(d) (describing

2    Infringing Marks associated with international class 034).)  GS Holistic also contends

3    that its chief executive officer's declaration establishes that $200,000 is "only a fraction

4    of the actual losses to its business" caused by counterfeiters.  (Mot. at 12.)  That

5    declaration, however, (1) asserts, without explanation, that GS Holistic's 2021 sales

6    would have totaled $23,250,000 absent counterfeit products in the market and (2) says

7    absolutely nothing about the damages specifically caused by Defendants in this case.

8    (*See generally* 2d Folkerts Decl. (Dkt. # 15) ¶¶ 8-13.)

9            The court is sympathetic to the difficulties GS Holistic faces in estimating actual

10   damages with any degree of certainty without the benefit of Defendants' cooperation in

11   discovery.  (*See* Mot. at 12.)  Without more evidence, however, the court cannot conclude

12   that an award of $50,000 in statutory damages for each of the Infringing Marks bears a

13   "plausible relationship" to GS Holistic's actual damages.  *Yelp Inc.*, 70 F. Supp. 3d at

14   1102.  Thus, because GS Holistic alleges only that the vaporizer its investigator

15   purchased had "a G Pen Mark affixed to it" (Compl. ¶ 29), the court concludes that GS

16   Holistic is entitled to statutory damages based on Defendants' conduct with respect to

17   only one trademark.  The court further concludes, in its discretion, that an award of

18   $2,000 for one trademark violation will serve the compensatory, penal, and deterrent

19   purposes of statutory damages without resulting in an undue windfall for GS Holistic.

20   This amount equates to slightly more than ten times the price of the allegedly infringing

21   vaporizer purchased by GS Holistic's investigator.  (*See id.*)  Accordingly, the court

22   awards GS Holistic statutory damages of $2,000.

1       2.    <u>Litigation Costs</u>

2       Under the Lanham Act, a plaintiff who establishes that a defendant has violated a

3 trademark "shall be entitled, . . . subject to the principles of equity, to recover . . . the

4 costs of the action." 15 U.S.C. § 1117(a). Here, GS Holistic seeks costs in the total

5 amount of $854.97, consisting of the filing fee ($402.00), its process server fees

6 ($190.00), and its investigator's fees ($262.97). (Mot. at 13 (citing Harris Decl. (Dkt.

7 # 16) ¶ 6); *see* Compl. at 15-16 (including costs of suit in its prayer for relief).) The court

8 awards GS Holistic its filing fee and process server fees because these are costs that are

9 routinely awarded in Lanham Act cases. GS Holistic has not, however, cited any

10 authority for the proposition that its investigator's fees are recognized "costs of the

11 action" under the Lanham Act. (*See generally* Mot.) Therefore, the court awards GS

12 Holistic costs in the amount of $592.00.

13       3.    <u>Injunctive Relief</u>

14       The Lanham Act empowers courts "to grant injunctions, according to the

15 principles of equity and upon such terms as the court may deem reasonable, to prevent

16 the violation of any right of the registrant of a mark." 15 U.S.C. § 1116(a).

17           According to well-established principles of equity, a plaintiff seeking a
permanent injunction must satisfy a four-factor test before a court may grant

18 such relief. A plaintiff must demonstrate: (1) that it has suffered an
irreparable injury; (2) that remedies available at law, such as monetary

19 damages, are inadequate to compensate for that injury; (3) that, considering
the balance of hardships between the plaintiff and defendant, a remedy in

20 equity is warranted; and (4) that the public interest would not be disserved
by a permanent injunction.

21

22

1    *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar

2    language in considering a motion for permanent injunctive relief under the Patent Act).

3    The Lanham Act provides, in the case of a motion for a permanent injunction, that a

4    "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of

5    irreparable harm upon a finding of a [trademark] violation."  15 U.S.C. § 1116(a).

6         GS Holistic asks the court to enter the following permanent injunction enjoining

7    Star Vape, Mr. In, and their "agents, employees, officers, directors, owners,

8    representatives, successor companies, related companies, and all persons acting in

9    concert or participation with" them from:

10        (a)  Import, export, making, manufacture, reproduction, assembly, use,
              acquisition, purchase, offer, sale, transfer, brokerage, consignment,
11            distribution, storage, shipment, licensing, development, display, delivery,
              marketing[,] advertising[,] or promotion of the counterfeit G Pen product
12            identified in the complaint and any other unauthorized G Pen product,
              counterfeit, copy or colorful imitation thereof[; and]

13        (b)  Assisting, aiding or attempting to assist or aid any other person or entity
14            in performing any of the prohibited activities referred to in Paragraph[]
              (a) above.

15   (Mot. at 14; *see also* Prop. Judgment at 2.)

16        The court declines to enter the requested permanent injunction.  First, GS Holistic

17   argues only that it is entitled to injunctive relief "[b]y the reasons explained in [its]

18   Complaint."  (Mot. at 13.)  It does not address the factors a court must consider before

19   entering a permanent injunction.  (*See id.*); *see eBay Inc.*, 547 U.S. at 391.  Second, the

20   injunction GS Holistic seeks now is broader than the injunction outlined in its complaint,

21   which does not include an injunction against "[a]ssisting, aiding or attempting to assist or

22

1   aid" others against performing the actions listed in part (a) of the proposed injunction.

2   (*Compare* Compl. at 15, *with* Prop. Judgment at 2.)  Third, although GS Holistic's

3   complaint describes the sale of one counterfeit Elite Vaporizer displaying one Infringing

4   Mark, it requests a much wider injunction relating to "the counterfeit G Pen product

5   identified in the complaint and any other unauthorized G Pen product, counterfeit, copy

6   or colorful imitation thereof." (*Compare* Compl. ¶¶ 29, 35-39, *with* Prop. Judgment at 2.)

7   Finally, "every order granting an injunction" must "describe in reasonable detail—and

8   not by referring to the complaint or other document—the act or acts restrained or

9   required." Fed. R. Civ. P. 65(d).  GS Holistic's proposed judgment violates this rule by

10  referring to "the counterfeit G Pen product identified in the complaint." (*See* Prop.

11  Judgment at 2.)  For these reasons, the court denies GS Holistic's request for a permanent

12  injunction.

13          4.      Destruction of Infringing Products

14          Finally, GS Holistic seeks an order directing Defendants, "at their cost, [to] deliver

15  to [GS Holistic] for destruction all products, accessories, labels, signs, prints, packages,

16  wrappers, receptables, advertisements, and other material in their possession, custody or

17  control bearing any of the G Pen Marks." (Mot. at 14; *see also* Prop. Judgment at 2;

18  Compl. at 16 (including an order for destruction of products in the prayer for relief).)

19  The Lanham Act authorizes the court to issue an order directing the destruction of articles

20  that infringe upon a trademark.  15 U.S.C. § 1118.  Here, however, GS Holistic has not

21  presented any argument or evidence supporting its entitlement to this relief, and—as with

22  its request for a permanent injunction—its request for destruction of any article "bearing

any of the G Pen Marks" is not supported by its investigator's purchase of a single vaporizer bearing an unspecified Infringing Mark. (*See* Mot. at 14; Compl. ¶ 29.) As a result, the court denies GS Holistic's request for an order directing the destruction of allegedly infringing products.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part GS Holistic's motion for default judgment (Dkt. # 13). Specifically, the court GRANTS GS Holistic's request for entry of default judgment against Star Vape and Jaebum In; AWARDS GS Holistic statutory damages in the amount of $2,000.00 and litigation costs in the amount of $592.00; and DENIES GS Holistic's requests for entry of a permanent injunction and for an order directing the destruction of infringing products.

Dated this 13th day of November, 2023.

JAMES L. ROBART
United States District Judge

ORDER - 17